Good morning, Your Honors. May it please the Court, I'm Janice Mazur, appearing for the Appellant NEI Contracting. With me this morning is my co-counsel Douglas Campion. I would like to reserve five minutes for rebuttal, please. The District Court decertified the class based on its finding that the defendant had a right to conduct individual inquiries into whether each member of the class expected to be recorded or impliedly consented to being recorded, and the Court found these individual inquiries would predominate over the questions of law and fact common to the class members. But that finding is inconsistent with the California Supreme Court's holding in Kearney v. Solomon Smith Barney. Before we get too deeply into the class action aspects of your appeal, when the District Court tried the case on the individual claim, after ruling on the merits, she then addressed Standy, correct? Yes. And she held that your client didn't have Standy, that the harm that he complained about, that he testified to, just wasn't covered by the statute. And I believe the District... Why doesn't that apply from the very get-go? I think that the, first off, that was an incorrect finding. The injury... sustained is the injury, is the violation of privacy that occurs the minute that he's recorded without his consent. So the U.S. Supreme Court has made it very clear that even if the named plaintiff's individual claim becomes moot or expires after... We're not talking about mootness, we're talking about there's a difference between mootness and Standy. Why doesn't the District Court's finding that your client lacks Standing apply from the get-go, from when the complaint was filed? Well, it doesn't, first off. Testify about the harm, that what he was upset about was because of the lack of a record, that he didn't know that there was a recording, he couldn't settle his billing dispute in a more timely manner. Well, from his lay perspective, he was harmed by that. I think he was trying to address the questions that were being asked. That's not the harm that's covered by the statute, though. But the legal harm that is the violation of privacy that occurs when he was recorded without his permission. He lost. Pardon me? He lost. And you're not appealing that, as I understand it. We didn't appeal the finding about that, but the Roper case and the U.S. Supreme Court case makes it clear that jurisdiction to appeal a denied class certification... We're not talking about appellate jurisdiction, we're talking about standing, constitutional standing, at the time you filed this her written findings remain unchallenged. At the time he filed his case, and through to today, he had standing because his injury occurred the moment that he was recorded. And the court's finding that he didn't have, that he wasn't injured because he made these comments about, well, jeez, I could have settled my other case sooner, really don't go to the issue of whether he had standing in this case as a named plaintiff, and he did. He had standing because he was injured. But he doesn't now. So what do we do with the district court's finding? I mean, it just doesn't exist? It exists, but I don't think it's relevant to the question of whether this court has jurisdiction, whether the jurisdiction of the appeal goes forward or not. We're not talking about appellate court jurisdiction. We're not talking about appellate court jurisdiction. But even if NEI doesn't have standing itself, as an individual plaintiff or as the named plaintiff, I don't believe it is, Your Honor. I think I think it is too, and the reason is that the cases you're trying to cite to us are not cases where the Supreme Court or anybody else determined that the individual named plaintiff had not suffered an injury that gives rise to a case where the person has died or time has passed and he's lapsed out. So there was a viable claim at one point, and for other reasons, that person no longer is entitled to collect money. That's not the problem that your client has. Your client has an adjudication that it was not injured, and if a party is not injured, it doesn't that end the case? Because under the Sousa case, the district court's erroneal denial, the plaintiff has a separate legal status. The class, let me say, has a separate legal status from the interest asserted by the named plaintiff. So even if the named plaintiff goes away, the class still has standing, and under the Garrity case, that was extended to cases in which... We have no class because we have no class representative. I mean, I don't know why somebody else wasn't brought in, but the only person who's standing there now is somebody whose claim has been found not to be valid. I think somebody, certainly somebody can be brought in, but I think that the issue here was the denial of the class certification correct. That was appealed. But we're not sure who can stand up and make that claim. Well, I believe, Your Honors, that the finding that the NEI didn't have standing was limited to the individual claim. Remember, when he went to trial, they were only trying his individual claim. Can you have a class without a class representative? I think that a class representative can be... I think that the class exists independent of the named plaintiff, and I think that's what the Sousa, the Sosna case says, and the Garrity case says. So it has an independent life. So even if a trial on the individual claims of NEI... And let's also remember, they only tried one claim. There was 44-some claims, and there was never any dismissal, formal dismissal of the other NEI claims that caused. So I think that at least those claims survived. You can avoid mootness by adding a new... I don't have any plaintiff, but this is a little bit different, because the district court said, given the claimed injury and the failure to prevail on the merits, that from the outset... I understand her finding to be that from the outset of this case, your client had no standing. First off, I don't think that that exactly was the finding, but at the time the class was alive, and what the Garrity case says, is that if the appeal results in a reversal... Let me see. I'm wanting to see. Sorry. It relates back. So any finding relates back to the class certification. So at the time that the class certification was denied, NEI's claim was live. There had been no adjudication that they lacked standing or they lacked any injury. And the injury, as a matter of law... Let me ask you this. Was there a summary judgment ruling on the merits of the claims? There was a summary judgment ruling, and in that ruling, the court found that, as a matter of law, that the advisal that the calls may be monitored was not the same as the finding that they were recorded. And I did want to point out that in our reply brief, when we referenced that, the record site was incorrect, and that appears in the supplemental ER at page 732, is the court's ruling on the summary judgment. That was the issue that was before the court at that time. So the claim was live. There had been no adjudication at the time of the decertification that NEI's claim was invalid, and so that happened subsequently. So I think that under the Garrity and it relates back. As I read Garrity, it was more focused on mootness, not standing. Would you agree? Well, I think Roper talks about... My question was about Garrity. I read that as a mootness case, which is distinct from standing. Well, yeah, it's... Yes, I think it was a mootness case, but if the appeal results in a reversal of the class certification and the class is subsequently properly certified, it relates back, and it may be adjudicated. So I don't think... And I think there is a... There is a difference between mootness and standing. Right. Well, we've consumed a lot of your time on the question of standing. Did you want to address any of the other issues? I sure did. Your Honor, let me see how much time I've got here. Well, I wanted to go back and touch on the fact that in the Carney case, the California Supreme Court case held that the district courts, that in the absence of an advisement, any advisement, that they could not anticipate that the callers' anticipation that maybe they were being recorded could not be presumed. And I think this holding defeats the rationale that was used by the district court in this case, where it kind of suggested that, well, because Hanson had used this beep tone thing for some years beforehand, and some of their long-term clients may have recognized they were recorded, that was rejected by Carney. I want to point out that in the respondent's brief, they didn't address the Carney case at all, nor did the two cases that the district court relied most heavily on, Torres and Kite. But in all of the cases that have looked at and analyzed Carney and looked at the predominance issue regarding consent, and this is the Steven Addis case, Raffin and Zacklett, in all of those cases, the courts found that consent is a common issue if we have a uniform recording that everybody hears. And I think this is just really critical, where every class member, as in this case, heard the same recording, the same message, and the message did not say they were being recorded. That creates a uniform event that does not require resort to individualized proof. And that's undisputed, that it was uniform. So when all the class members hear the same message, all legal issues are common facts, undisputed, that everybody heard the same message, the message didn't say they were recorded, and all the calls were recorded. So given that, everybody's in a uniform situation, all of the legal issues which might arise, for example, was the disclosure about monitoring sufficient, which the district court already ruled as a matter of law it wasn't, or who's got the burden on consent, or can consent be implied. All of those issues are going to be common to every single person who's in the class during that class period. Briefly, I'd just like to say also that in the district court's order of August 8th, which granted plaintiff's motion for reconsideration and certified the class, kind of the middle ruling, the court found in that ruling that plaintiff met all of the requirements for class certification under Rule 23. When the court subsequently reversed and decertified, the only issue that the court decertified on was the predominance. So in the event this court reverses the class certification, decertification ruling, and sends the case back, it should deem that the class can and should be certified because all of the other requirements have been met under Rule 23. I did real briefly. Sure, it's a separate appeal. There's a lot to talk about here, but the main point that I'd like to make is that under the Graham Supreme Court case, the court directed that a broad pragmatic view be taken of what constitutes a successful party under Rule 1021.5. So in the district court, she focused primarily, she was focusing on the fact that the plaintiff didn't obtain monetary relief, and that was not the primary relief the court found. But under Maria P. v. Riles, which is also a California Supreme Court case, they said that the fees, an award of fees is not limited to the primary relief. Under the statutory language in 1021.5, it's a disjunctive statute. It can be for vindication of an important right or obtaining the primary relief sought. And I think it's important to note that in this case, really, there was two things that plaintiff sought. One was monetary statutory damages, and one was to change the behavior so that the recordings, the message would be changed to agree. Did you ever ask before you filed the lawsuit to, hey, you need to change this recording? There was no pre-trial demand of that or request of that. Why didn't that just preclude your claim for attorney's fees? She relied on that basis. She does rely on that basis. And the... I mean, look, as I understand this dispute, it arose from, it began with a dispute over a billing. Well, not exactly. I think that the facts there have been misrepresented. There was some dispute. There was, oh yeah, there absolutely was a dispute. Between the two. Sure, there was a dispute. And that seemed to have been settled. And that was settled, and it was settled. And then about three months later, this lawsuit is filed. Right. But one has nothing to do with the other. But certainly during that period of time, if you could have sent a letter that said, hey, you know, there's a problem with your message. Right. Well, under the Cates case, they talk about the futility exception. Pardon me? Did you do that? No, that wasn't done. But it falls within the futility exception under the rules, where it says... But they're futile about doing that. Pardon me? Why was that so futile? I mean, it's a simple thing, write a letter. Well, it was futile. Lawyers do it all the time. Right. But in this case, Hanson took the position for 17 months and vigorously advocated that there was nothing wrong with their recording. They said, no, it's perfectly fine that we just say... That was a lawsuit that was filed, right? Well, they were saying it all along from the very beginning. Didn't they fix their recording shortly after you amended your complaint? Well, it was after they amended the complaint. But the thing is, if they had fixed that recording early on at the beginning when the complaint was alleging a 632 violation, it would have resolved that problem too. They would have cut off the class period right then, the moment they changed that. And they didn't. They continued to vigorously argue that. That's what their summary judgment was about. And even after they lost the issue on summary judgment, they continued to argue it the Cates case. First off, it says that this is a judicially created rule that should not be used as a shield to deny legitimate fees. It's meant to deter attorneys from filing frivolous suits. And it certainly wasn't frivolous because a very important privacy right that California has held to be a very important right has been vindicated here. Right. So they vigorously defended this. They waited 17 months. And then even after they changed it, they didn't tell the plaintiff or the court that they had changed it. So, I mean, the notion that they would have just said, oh, yeah, sure, we'll change it, was, I think, was incorrect. And even if you want to give some credence to that, the Cates case says that this shouldn't be used to deny fees. On a 1021.5 fee request, discretion is pretty limited. And the courts have said that the fee should be awarded unless it would be unjust to do so. And I'd like to come back real quick to just one point, is that in this case, monetary damages really were incidental to the other relief, which was correction of the statutory violation. Your case is about the money. Well, it's about money. But if we look at 1021.5 and the fee. What are the statutory damages under the statute? $5,000, up to $5,000 per call. Right. But, and of course, the class could have been limited. How many was the class? 12,000 callers. And how many phone calls were at stake? There was something like 220,000 phone calls in the class period. We're talking like really big bucks. Well, right. But those big bucks wouldn't have gone to the named plaintiff. And that's when you look at 1021.5, you don't look at what the overall potential recovery could be. And it was very likely that this class would have been narrowed anyway to first callers, which would have greatly reduced that. That wasn't what you moved for class certification, was it? Pardon me? You didn't move for class certification on that basis, did you? We didn't. Callers? Well, it was raised in response to the motion to decertify. You didn't file a motion for class certification and identified the class as the first callers? No, not initially. No, because we didn't know what the calls would be and we didn't know what the defense would be. And discovery took, I think, three years from the start because there was a stay on the discovery that the defense put into effect. But if we look at- Do you want to save some time for rebuttal? Yes. Thank you, Your Honor. Okay. Good morning. May it please the Court, Fred Puglisi of Sheppard, Mullen, Richter, and Hampton on behalf of the APLE, Hanson Aggregates. And I have with me today Jay Ramsey, one of our senior associates in the office and hopefully soon to be a partner. We also have in the audience, I should point out, one of the in-house counsel from Hanson Aggregates. As the Court has noted, we're dealing with two appeals here today. One dealing with the appeal of a denial of class certification and one challenging the District Court's denial of attorneys' fees. I would like to start with the certification appeal and then move on to the on the class certification issue. As this Court has noted, the appellant, NEI, in this instance lost. They were found not to have standing to bring this claim in the first instance, right out of the box. They were also found to have not met their burden of proof with regard to the issue of injury under the statute and the issue of consent. They have not challenged those rulings by the District Court. Personally, I contend those rulings were absolutely correct, but they have not raised that in this appeal. In footnote 10 of their opening brief on page 16, I believe it is, they specifically say, we are not challenging the judgment or the rulings by the District Court, other than the motion denying certification of a class and then subsequently the attorneys' fees. That is important. As this panel has basically stated, that is very different. Don't trust us. Okay. Well, I'm just saying that to me is very different than the cases they have cited. Explain to us the difference. I mean, there are cases where the class survives. And we've had a couple of Supreme Court cases cited, Garrity and Susma. Why is that different? Well, if you look, I'll start by saying, if you look at the cases, you have to look at the facts. And so, if you want, I'll go through each one of them. But on pages 32 to 35 of our brief, we went through cases, multiple cases from this circuit, the 7th Circuit, the 11th Circuit, and the Federal Circuit, all of which say, when you lose on the merits, when you lose on the merits, which NEI has done, you can't prosecute. The issue of a certification becomes moot. And, I mean, that's the Amati case, the Telfair case, the Frostberg case, the Williams case, Lebeau, Rifkin, Greenlee, Corbett. I'm thinking about the reasoning offered up by the other circuits that have spoken to it. So, in, you've got to stop and think which one is which. Garrity, I think, is the prisoner who, he served his time, so parole wasn't an issue anymore. Correct. He's released from prison. That's a very different situation from losing on the merits. This man has been deprived of his liberty, and now he, and he's challenging that, and he happens to be released from prison. That's very different from losing on the merits. The end result is explained in a different way, but the end result remains that Garrity cannot benefit from whatever happens in the case, just as the person who'd filed the divorce action in Iowa, I think that was the Sousna case, could not benefit because by the time the case was litigated, I think it was that she had satisfied the residency requirement that she was trying to challenge. And the court, in both of those cases, said, well, yeah, the individual plaintiff cannot gain anymore, but the case hasn't gone away. In this case, NEI cannot benefit anymore for a different reason, but why should that different reason affect the rights of other people in the putative class? Because if you think of it, they never had the claim in the first place. They never had. You want to talk about Garrity. They were never deprived of their liberty, right? I mean, they were never, based on the district court's ruling, in a position to ever assert this. They shouldn't have. Let me ask you this. Is it possible that when they filed the case, and they raised the claim under the statute, that their statutory claim, and they're just failing to comply with the statutory claim, therefore there was a violation of their right to privacy under the statute. Why isn't that enough to give them standing? As the court knows, when you get to an appeal, you consider the entire record below, even if you're looking at preliminary matters. And I understand that you could say they may have had it at the beginning, but standing an injury is an issue of fact. Here, you needed to develop a record. That record was developed. He testified, as the judge noted, he testified in this case originally that, no, I never suffered any injury. There's no injury whatsoever. Then Spokio came down, and he came up and he said, well, you know what, actually, had you told me, I wouldn't have made you file a lawsuit against me and proceed through all this prior litigation. And that's again... Spokio didn't eliminate all statutory damage kinds of claims like this one. It requires a concrete injury. Correct. I'm not saying that this ruling bars every case. One could argue that an invasion of privacy under the statute is sufficiently concrete to meet Spokio. I don't know that that's the case or not. I think that I understand what your court is saying in terms of it could be that just the invasion of privacy. Here, the court found there was none. And it did that as a factual finding, which is not being challenged. And I think it's important to understand why the court did that. I mean, this is a situation where you are in a unique industry. Most people don't order those huge trucks of concrete. You know, I doubt many of us in this room have. Maybe y'all have. I have not. But there is a custom and practice in this industry that everybody knows. Everybody knows you record those calls because you've got to get it right. And it doesn't take a lot of... This all came out in trial. These were the facts. These were the testimony. You've got to make sure you get it right because the last thing you want to do is pour foundation with all this concrete and find out you used the wrong mix. And all of a sudden, that 10-story building you built on top of it starts moving. I mean, everybody knows you record these. That was the testimony. That was the evidence. The court accepted it. Everybody in the industry knows it, and they actually call us to say, hey, what exactly did we order? We've got to make sure we get it right. Those were the findings here. So I'm not saying you can never have an invasion of privacy by giving some form of notice. But the facts in this situation with respect to NEI specifically, after hearing this case, after hearing the evidence, taking all the testimony, looking at the documents, this court determined they don't have standing. They were not injured. They don't have a concrete harm. And not having challenged that... I thought I heard you say that there actually may have been standing at the outset. But when the trial judge made that determination after trial, how does that impact, if at all, what standing there was at the outset of the case? If I said that, I misspoke. They never had standing. What I was saying is that standing in this context is based on injury. Whether somebody has suffered an injury is an issue of the facts to show that. It took a while here to develop all those facts to show that he did not have standing. And the district court... The flip side of that is for them, all they have to do is make plausible allegations in their complaint to get in the door for standing purposes. Correct. And if the other side begins to question standing, say, for example, at summary judgment, then they have to put in a little bit more to show that they suffered an injury. And if there's still an issue about standing when we get to trial, they've got to establish the facts. And that's my point. Motions to dismiss are a little more difficult. There's a different standard. All you have to do is allege it. In a summary judgment, there's a tribal issue of fact thing. Okay, now we've gone through trial. The fact that we established it at trial means she didn't have it from day one. And I believe that in and of itself is such a highly distinguishable fact. That's what distinguishes this case from Garrity. Exactly. Or any of those. As I understand Garrity, the prisoner gets released, but the claim is still there. He had his liberty denied. I mean, there's nothing more... In my mind, that is the worst thing that can happen to a person is have their liberty improperly denied, which is what he's talking about. Okay, now he's been released. But that harm was there. It was not an issue of him not having standing. He was harmed. It's just now he's out of prison. And Your Honor, I mean, Judge Clifton, I agree with you. We hope he will have to go back to prison so we'll never have to go through that again. But the bottom line is, standing at the outset is important. One of the things that was also raised here that I would like to touch on briefly with regard to the issue of class certification, if I can, is they raised the Kearney decision. And there was this suggestion that Kearney decided the type of notice you must have. Now, I go back to the general proposition that a case cannot stand for a proposition not addressed. Kearney was a choice of law case. Kearney did not decide what type of notice must be given. It was a choice of law case. And I would actually say that Kearney supports us, because what Kearney eventually said is, look, you can imply that somebody consented based on the fact they were given notice. But what Kearney never said is that you must always give that notice. And this court has actually issued rulings in which they have said you don't have to, right? There's the case in which somebody signed terms and conditions that said we record your calls. And that was deemed sufficient. So it's really an issue of fact. And that's what this judge, Judge Bichon, the district court judge, found. And when she looked at all those facts, she determined that they were individual and the individuals predominated. That was a factual determination. That's entitled to deference. There's an abuse of discretion standard that applies to that. And for that reason, I believe she was proper in denying certification. I know they talked about the first call class. We dealt with that a little in our I'm sorry. I mean, and they waived it anyway, because they waived at the day of trial. They waived everything other than the last call, not the first call. So unless the court has any questions, looking at my time, I'll move on to the attorney's fees. So on the attorney's fee issue, I think it's important, again, to note that the district court denied NEI's request for attorney's fees for four separate and distinct reasons. Not one, but four. All I or Hanson has to do to prevail on the appeal of the attorney's fees award is convince this court that she was right or that she did not abuse her discretion on one. As long as she didn't abuse her discretion on just one of those, the judgment or the award should be, excuse me, the order should be affirmed. They, on the other hand, have to prove she abused her discretion on four separate and distinct issues. What's the easiest route to the result you seek? The easiest route, I think, I mean, for me, I think three, I think all of them are bulletproof. But I think the fact is that, I mean, we talked about a little bit about the primary remedy. I mean, you know, this whole thing came up, because if you think about it, the case that sets all that up is the Tipton case. This court is responsible for the Tipton case, right? Because this court is the court that went to the California Supreme Court and said, what do you need to do to recover on a catalyst theory? And the California Supreme Court told this court what is required. And that is that, I mean, you have to establish the lawsuit was a catalyst motivating the that's what they said. The primary relief side here was money. I am just sorry. I mean, you're talking about a billion dollars for a class and up to the day of trial, you're talking about $220,000 for the named plaintiff. You have a district court who has lived with this case for years, gone through multiple amended complaints, motions to dismiss, motions for summary judgment, motions for class certifications. They have listened to all of it. And in the end, with all that knowledge and understanding and facts, she said this case was never about anything other than the money. And that is the truth. And because of that, and because of the law for the catalyst theory, that in and of But I also think it's important to recognize that, I mean, I know, Judge Pais, you raised the futility issue. How this case came about is important because our trial judge, the district court, had all this. And she made the determination, which is, again, a determination of fact. So it's reviewed for abuse of discretion. Having lived through all this and seen the entire history, she said this wasn't futile because she knew it wasn't futile. We had no problem adding a word recording. I mean, it was no big deal. And it wasn't just not a big deal to us. It wasn't a big deal to anybody else. I mean, the fact that we added it, all of a sudden, we didn't all of a sudden have people saying, oh, my God, we never knew this. You know, this is terrible. It was a non-event. And it wouldn't have been futile because if you look under the Graham case, which is a California Supreme Court case, you're supposed to be precise and specific in what you say you want. You can go back and look at the records. They don't even mention in those earlier complaints anything about the admonition or the lack of the word recording. We read between the lines. When they finally got to the 632.7 case, we read between the lines. And that's what the court is saying. OK, I get it. These pleadings were completely uncertain. We read through the put it in there because nobody cared, which goes to the third point. I mean, to get damages for attorney's fees, you're supposed to prove you gave some sort of tremendous or significant public benefit. The court looked at this and said, adding that word record didn't add any benefit to the public. And she did that again based on a set of facts, which are reviewed, again, by an abuse of discretion. She knew. I mean, she heard all of it. That this only occurs when you're ordering concrete, truckloads of concrete. I mean, those big trucks of it. It's a known common practice in the industry. We had people testify to this. I mean, that the customers themselves would call. They testified to this. That we gave beep tones for years. It was no big deal to us. I mean, we were giving beep tones, those annoying beep tones, if you've ever heard them. Some people recall them. Some people don't. We're old up here. Okay. Well, I'm there with you. I can remember the beep tones. So they update the system and they say monitor, which they think is perfectly fine. They don't think there's any problem with it. And frankly, I tend to agree with them. I mean, they don't say how they monitor, but either way, it wasn't a big deal. So when we changed it, when this thing percolates up, we're like, is this what it's for? Change it. If they had told us back in the original lawsuit, hey, you should put in the word record, we had done it. Now, that would have never gotten rid of the case, let's be honest, because this case has always been about money. A billion dollars in statutory damages, $220,000 for NEI, which is what they sought, which was four times more than they owed us for the concrete that they had to pay. So I mean, the court certainly did not abuse its discretion. And those are three of the four findings she made that this court would have to say was an abuse of discretion to find that they're entitled to attorney's fees. The last one is just the issue of no necessity or burden for private enforcement. Obviously, there, the court found that there's no issue with the financial burden side because you're seeking billions and hundreds of thousands just for you. And on the public enforcement, they had simply done nothing to show that there wasn't something there. And we know from public records and actually from published decisions that the government does, in fact, prosecute people that they feel are improperly invading people's privacy under the California Invasion of Privacy Act. Just a bit out of time. I was going to say I'm out of time. So let me just say, unless the court has any questions, I would simply conclude by saying the district court did not abuse its discretion in any of the orders that entered here and that all those orders should be affirmed. But if you have questions, I would obviously answer them. I don't think so. Thank you for your time this morning. Thank you. I believe you had about three minutes. I'll talk faster. One minute and 30. Okay. I think counsel just said, if I heard him correctly, that injury is a question of fact. And if that's so, that fact had not been decided at the time the case, the class was decertified. Garrity says that the claim remains live if it was that the claim exists, if it was live at the time of the decertification, which it was. Do you maintain that when the district judge determined there was no standing that that ruling didn't define whether or not there was standing at the outside of the case? Yeah, I think it did not define that because I think she made that finding based on the testimony hadn't happened yet at the time of the decertification. So if the injury is a question of fact, we've got standing because that question of fact did not get resolved until after the decertification. If it's a legal issue, then Mr. Barajas testified at trial that he didn't know he was being recorded. That's not disputed. And so that injury, if it's a question of law, that injury occurred at the moment he was recorded. So that injury also existed at the time of the decertification. So either way, I think we have standing. And I think it's important to note that the class should not be lost only because of if the named plaintiff's claim goes away. And another person, another representative could refile this lawsuit anyway. So, you know, it's the putative class member shouldn't be denied their chance to litigate this anyway. I think that the discussion regarding the Garris case, the man lost his liberty. Sure, he lost his liberty and that's important. But the California Supreme Court has and the California legislature has deemed this invasion of privacy to be a very important right. They said it's an affront to human dignity to record someone surreptitiously. So we're not here to compare whose invasion or whose harm was greater. The point is that the statute, the legislature and the Supreme Court has said that this is a violation and it occurred. And I think that there's been no finding otherwise at the time of the decertification. And you're over your time. Thank you, Ron. Thank you very much. We appreciate your arguments this morning. Case is submitted and that ends our session for today. All rise.
judges: Paez, Clifton, Gleason